67    655
72    922

## C. ATKINSON *v.* M. A. WHITNEY ET AL.

1. MORTGAGES AND TRUST-DEEDS. *Contemporaneous agreement of grantee. Statute of frauds. Specific performance.*

    Where a trust-deed is executed, and contemporaneously therewith and in consideration thereof, the grantee signs an agreement that in case of default he will prevent a sacrifice of the land embraced in the trust-deed by purchasing it at a valuation to be fixed by appraisers mutually chosen, and the grantor accepts the agreement, and by his conduct acquiesces therein, it will be enforceable against the grantee although not signed by the grantor. *Marqueze* v. *Caldwell*, 48 Miss. 23.

2. SAME. *Agreement acted upon by grantor. Acquiescence; how shown.*

    If, after default in the payment of the debt secured, the grantor and grantee each select an appraiser, and they act under the appointment, and the grantor tenders to the grantee a deed to the land, and demands payment of the valuation in excess of the debt; this will be deemed an acquiescence in the agreement, and furnishes a sufficient consideration therefor, and entitles the grantor to specific performance thereof.

3. SAME. *Appraisement of land under agreement. Over-valuation.*

    If the appraisement is made in the manner agreed upon, it cannot be attacked merely upon the ground of over-valuation.

4. APPRAISEMENT OF LAND. *Appointment of appraisers. Notice to parties. Valuation; how made.*

Such agreement for an appraisement is not a submission to arbitration, and the rules of law governing such submissions do not apply. It was not necessary that the appraisers be appointed in writing, or that they give notice to the parties of the time they would view the land, or that they act upon the testimony of witnesses, the agreement being silent as to these matters.

5. SAME. *Sufficiency of appraisement. Certainty. Survey not essential.*

The trust-deed and agreement having described the place as containing "680 acres, more or less," the quantity conforming generally to the legal subdivisions enumerated, an appraisement of the land at "$5.50 per acre," without specifying therein the number of acres, and without a survey to determine the exact quantity, is not objectionable. Neither the failure of the appraisers to name the exact quantity of land, nor the use in the deed of the words "more or less" will make the appraisement void.

6. SAME. *Return of appraisers. Immaterial error.*

Nor will the appraisement be avoided because it inadvertently referred to the land as that of the husband of the grantor, it being admitted that he owned no land, and the right land having been in fact appraised.

FROM the chancery court of Pike county.

HON. LAUCH McLAURIN, Chancellor.

Prior to December, 1886, the appellees, Mrs. M. A. Whitney and her husband M. M. Whitney, had become indebted in a large sum to appellant, Atkinson, a merchant at Summit, Miss., and this debt, alleged by appellant to be about $2000, was unsecured. Mrs. Whitney was at that time the owner of the place in controversy, containing about 680 acres, and this was unencumbered. In this condition of affairs, appellant being desirous of securing the debt, requested appellees to execute a trust-deed upon the land in controversy. Objection was made by Mrs. Whitney to the execution of the trust-deed, because she feared their inability to pay the debt, and wished to avoid the sacrifice of the land incident to a forced sale. To meet this objection Atkinson agreed that if they would execute the trust-deed he would provide against a forced sale in case of default, by purchasing the land at a price to be fixed by appraisers. Thereupon Mrs. Whitney with her husband executed

the trust-deed upon her land, and at the same time Atkinson signed and gave them an agreement, without date, as follows :—

"This agreement entered into between M. M. Whitney and M. A. Whitney, of the first part, and C. Atkinson, of the second part, witnesseth ; whereas, the parties of the first part are indebted to the party of the second part in the sum of $2021.28, evidenced by their promissory note, dated December 23, 1886, which note they have secured by giving and executing a trust-deed on a certain tract of land, fully described in said deed of trust as follows [here follows a description], containing 680 acres, more or less, and whereas the said parties of the first part are desirous of liquidating the above-described note of $2021.28, by selling the above-described lands, and applying the proceeds to the payment of said note, now if the said parties of the first part do not succeed on or before the 1st day of November, 1887, in selling the aforesaid lands, then the parties of the first part and the party of the second part shall each select one appraiser who shall go upon the lands before-described, and shall ascertain the value thereof, and in case the two aforesaid appraisers do not agree as to the value, then that said appraisers are to select a third man, and the amount agreed upon by any two of the aforesaid three appraisers shall be considered the true valuation, and the parties of the first part shall in consideration of the amount of the valuation so arrived at, make to the party of the second part a warranty deed to the aforesaid described lands, which amount shall be applied to the payment of the aforesaid note of $2021.28, and the excess if any shall be paid to the parties of the first part.          C. ATKINSON."

The Whitneys were unable to pay the debt secured or to dispose of the land as provided for in the agreement, and, default having been made, both Atkinson and the Whitneys proceeded to act upon the agreement by selecting each an appraiser who together viewed the land but failed to agree, and no further steps were taken by them. Two other appraisers were then selected in the same manner, and having failed to agree called in an umpire. After examining the land, they appraised it at $5.50 per acre, one of the appraisers refusing to concur. The return signed by them erro-

neously referred to the land as that of M. M. Whitney, but it was well known that it belonged to Mrs. Whitney, and that the husband owned no land.

Pursuant to the agreement and appraisement, the appellees tendered to Atkinson a deed to the land and demanded payment of the valuation in excess of the secured debt, but the latter refused to accept the deed or pay the sum demanded, and directed the substituted trustee to advertise the land for sale under the trust-deed. The Whitneys thereupon filed this bill to enjoin the trustee from making the sale, and, after stating the above facts, prayed for specific performance of the agreement, tendered a deed to Atkinson and demanded a personal decree for the difference between the debt and the appraised value of the land.

The contention on the part of Atkinson is that the agreement was voluntary and without consideration, and void because not signed by Whitney and his wife. It is also insisted that the appraisement is void, because (1) the appraisers were not appointed in writing; (2) no notice was given by the appraisers of the time they would view the land; (3) no witnesses were examined as to value; (4) the return was uncertain, and for that reason void, since the appraisers failed to survey the land and ascertain its exact quantity, and the value was fixed at a certain sum "per acre;" and (5) the written return of the appraisers referred to the land as that of M. M. Whitney, the husband, whereas the land belonged to Mrs. Whitney.

The decree was in accordance with the prayer of the bill, and the defendant, Atkinson, appeals.

*W. P. Cassedy* and *Calhoon & Green*, for appellant.

The instrument is without date, and on its face shows that it was intended to be signed by Whitney and his wife as well as Atkinson. It contains mutual stipulations which cannot be invoked as against them, yet they seek to hold Atkinson. It purports to be an agreement "between M. M. Whitney and M. A. Whitney, of the first part, and C. Atkinson, of the second part."

Even if executed contemporaneously with the trust deed, it

cannot be enforced, as Atkinson intended it to be signed by the Whitneys as appears from the context, and it is nowhere shown that he knew that they had not signed it. It does violence to the statute of frauds to hold it binding without the signature of the parties to be bound. Otherwise it would bind one party and not the other. So if the award suited the Whitneys, they would enforce it; otherwise not. It is necessary to show the assent of both parties to an instrument containing mutual stipulations or mutual covenants. *Lee* v. *Dozier,* 40 Miss. 477; *Johnson* v. *Brooks,* 31 Ib. 17. The submission to arbitrators was therefore wholly in parol, and having reference to land was void. *McMullen* v. *Mayo,* 8 S. & M. 298.

It is fundamental that if one of the parties was not bound, the other was not. 1 Pars. on Contr., § 1292; 14 Am. Dec. 76; 30 Ib. 626.

The statute of frauds cannot be avoided by submitting to arbitration. The instrument is fatally variant from the deed of trust, and in no way explanatory of it. In its very nature they could not be contemporaneous, and the evidence as to the time of their execution being contradictory, the conflicting provisions will be held as conclusive that they were not part of one contract.

Viewing the pretended agreement as a subsequent one, it will be without consideration, and a court of chancery will not enforce specific performance of a voluntary contract. *Vassar* v. *Vassar,* 23 Miss. 379; Jones on Mort., § 246.

But viewing the agreement as valid, the award is void. It shows the land valued by the arbitrators was the land of M. M. Whitney, not M. A. Whitney. It values the land at "$5.50 per acre," whereas all the deeds show that it contains 680 acres "more or less." The award is thus uncertain. If anything is left undecided so that the dispute is not at rest, an award is not perfect or final. 2 Pars. on Contr., 200; *Handy* v. *Andrews,* 52 Miss. 630; *Rhodes* v. *Hardy,* 53 Ib. 587; Kyd on Awards, 91, 129. *Gibson* v. *Powell,* 5 S. & M. 727; *Williams* v. *Williams,* 11 Ib. 399.

The arbitrators should have been sworn. *Hill* v. *Hill,* 11 Ib. 616; *Jenkins* v. *Meagher,* 46 Miss. 93. Again, the husband had

no power to submit the interest of his wife to arbitration. *Fort* v. *Battle,* 13 S. & M. 137; *Handy* v. *Cobb,* 44 Miss. 699; and this would seem to finally dispose of the case.

*S. E. Packwood,* for appellees.

The agreement was not strictly a submission to arbitration, but viewed as such was valid. It was not necessary that the arbitrators be sworn, unless specially so provided. *Davy's Ex'rs* v. *Faw,* 7 Cranch, 172; 1 Am. & Eng. Encycl. Law, 655, 674; Caldwell on Arbitration, 16, 173.

The use of the words "more or less" in the agreement, and the award at $5.50 per acre, does not make the award uncertain. "More or less" simply means that the buyer takes the risk as to the quantity. *McCoun* v. *Delany,* 6 Am. Dec. 635.

There is nothing in the agreement or the arbitration that violates our statute of frauds. Atkinson is the party sought to be bound, and he signed it. Sugden on Vend., 99; *Marqueze* v. *Caldwell,* 48 Miss. 30.

The reference in the return of the appraisers to the land as that of M. M. Whitney was a mere clerical mistake, which a chancery court will correct.

The agreement was not without consideration. It and the trust-deed were contemporaneous, and stand as complements to each other. If A. promises B. to pay a sum of money if he will do a particular act, and B. does the act, A. is liable, although B. did not at the time of the promise engage to do the act. The performance clothes the contract with sufficient consideration, which relates back, and the promise becomes obligatory. 1 Am. Rep. 258; 3 Am. & Eng. Encycl. Law, 831.

*Nugent & McWillie,* on the same side,

Filed a brief mainly discussing the evidence, and making the following points:—

The execution and delivery of the trust-deed was an ample consideration for the agreement, and the two instruments constitute really one transaction. The appellees signed the trust-deed, and the appellant the agreement. Although the appellees did not sign

the agreement they have recognized it, and acted upon it throughout, and now rely upon it. Their execution and tender of the deed to appellant, and the institution of this suit to enforce the award coupled with the tender of the deed, conclusively determined their obligations and rights in respect to it. The appellant objected only when the award did not coincide with his wishes. *Marqueze* v. *Caldwell*, 48 Miss. 30. Manifestly the appellant and the appellees bound themselves, first, by the trust-deed, and afterwards by selecting an arbitrator and the institution of this suit. *Williams* v. *Tucker*, 47 Miss. 678.

The entire contract between the parties is represented by the trust-deed signed by Whitney and wife, and by the contemporaneous agreement signed by Atkinson. If there could be a point raised under the statute of frauds, it would be met by this statement. The grantors in the trust-deed knew that their property, by their own act, was dedicated to the payment of .the debt, and the agreement extended only to the method of ascertaining the value so as to promote this end. *Fisher* v. *Kuhn*, 54 Miss. 480; *Jelks* v. *Barrett*, 52 Ib. 315; *Bowers* v. *Andrews*, Ib. 596.

*Lamkin & Lamkin*, on the same side.

The valuation by the appraisers was not an arbitration. Atkinson had already agreed to pay the difference between the valuation and the amount secured by the trust-deed if there was any difference, and unless there is fraud proven on the part of the appraisers the valuation as to the price per acre should not be inquired into. There was a perfect agreement as to how the appraisers should be selected, and there is no dispute about the fairness of the selection. It was not necessary that they| should be sworn, or for witnesses as to value to be examined. The appraisers themselves were upon the land and made an examination. Atkinson was not prejudiced by the failure to notify him formally of the time the appraisement would be made, as he could not, had he been present, have interfered. He admits he knew nothing about the land himself. The agreement was a binding contract on Atkinson, based on a sufficient consideration. Its execution was the condition upon which the

deed of trust was given.   The appellees accepted the instrument, retained it until the appraisement was made, and gave it to the appraisers to guide them in their duty.   Both parties thus acted on the agreement.   The deed of trust and agreement being mutual, the promises furnish a consideration the one for the other.   Chitty on Contr., 8.

The return of the appraisers was sufficiently certain.   The agreement gave the number of acres to be appraised as 680 acres " more or less."   It was therefore unnecessary to survey the land or ascertain the exact number of acres, as the parties took the risk as to quantity.   Even without the words more or less, the description of the land was specific, as the quantity is not of the essence of the contract, but a matter of description merely.   *Snow* v. *Chapman,* 1 Root, 528 ; 15 Johns. 472 ; 5 Mass. 356 ; 6 Am. Dec. 635.

Argued orally by *S. S. Calhoon,* for appellant, and *W. L. Nugent,* for appellees.

WOODS, C. J., delivered the opinion of the court.

We think it unnecessary to follow the counsel for appellant, in their argument upon the minor propositions involved in the case and discussed in briefs of counsel respectively.

1. In the absence of any pretense of fraud in the appraisement, but on the simple averment that the appraisers put an over-valuation upon the lands, we must decline to enter upon that field of inquiry and speculation.   The appraisers, admittedly, behaved honestly and fairly, and we cannot disturb their simple appraisement of the lands.   The proofs taken on this point were wholly unnecessary, but having carefully considered them, we have no hesitation in saying that they strongly support the correctness of the appraisement, if that, indeed, had stood in need of any support.

2. The various grounds of complaint set up and relied upon as to the mere manner of the *parol submission to arbitration* by the parties, as the matter is called by appellant's counsel, are untenable, for the reason that, whatever are the rules governing *submission to arbitration,* this case can be no way affected thereby, inasmuch as this was in no proper sense an *arbitration,* but simply an *appraisement*

of the value of the lands by persons mutually selected for that purpose. There is nothing in the agreement which provided for the selection of the appraisers which required their appointment in writing, or which necessitated the production of witnesses before the appraisers, or made necessary service of notice upon the parties of the time when the appraisers would go upon the land, as directed in the agreement of the parties, and appraise the property.

3. The appraisement of the lands was not void for uncertainty by reason of the appraisers not having had the plantation actually surveyed and the exact number of acres ascertained. The number of acres, as shown by the legal subdivisions enumerated in the descriptions of the place in both the trust-deed made by appellees and the agreement signed by appellant, is clearly shown, and the fact that the tract of land is said to "contain 680 acres, more or less," may not be held as making uncertain the quantity shown to exist. Here, as in any conveyance of lands, the meaning of the words "more or less," is that the parties shall run the risk of gain or loss, and if the quantity of land shall prove greater than that sold, the seller shall be loser; and if the quantity shall prove less than that sold, then the buyer shall prove loser; but, in either event, the parties shall abide by their contract. And, therefore, 680 acres was the correct quantity in the present case, and its appraisement at so much per acre was not objectionable, much less void, for uncertainty.

4. The lands actually appraised were the lands enumerated in the deed of trust and the agreement to appraise; these lands were the property of M. A. Whitney, as was well known to the parties to the contract; M. M. Whitney owned no lands, but he was the head of the family residing on this plantation; and the statement of the appraisers that their appraisement was of the lands of M. M. Whitney was inadvertence in the insertion of the initials of the husband instead of those of the wife. The proper lands were properly appraised by the proper men, and we shall not hold the action void because of this immaterial inadvertence in writing the name of the owner.

But without going further into these minor questions, we now

direct ourselves to the consideration of the two propositions on which the contention rests, viz : 1. That the agreement, exhibit A to the amended bill, being a contract for the sale of lands and not being signed by appellees, is not enforceable against them, and cannot be enforced against appellant. 2. That the agreement, exhibit A to the amended bill, was a voluntary agreement on the part of appellant, and without consideration to support it, and therefore it is invalid.

Let us examine them in order, and see if they or either of them are maintainable.

On the first proposition, we are warranted in declaring that there is much direct evidence and strong supporting circumstances tending to show that the deed of trust executed by appellees, and the agreement signed by appellant, made exhibit A to the amended bill, were executed contemporaneously, and were made to evidence one contract, and that each was executed in consideration of the execution of the other. Appellees bound themselves to secure appellant in a large debt for which appellant had little or no security, by signing and executing the deed of trust on Mrs. Whitney's plantation; and, on his part, appellant bound himself to see that the plantation was not sacrificed at a forced sale, by agreeing to unite with appellees, after condition broken in their deed of trust, in having the lands fairly appraised, and himself purchasing them at such appraised value.

It is true the appellees did not sign the agreement, exhibit A, but they have in every other possible way signified their consent and adhesion thereto. They have joined appellant in having the lands appraised; they have in writing accepted the action of the appraisers as binding upon them, and they have executed the proper conveyance to the lands and tendered the same to appellant in every method open to them. The agreement was accepted by appellant, and his acceptance evidenced by his signing the same on the day he delivered it to appellee; the acceptance of appellees has since been evidenced, in writing and by solemn deed, and we do not see why the contract is not enforceable against appellant on this state of facts. This was, in effect, a contract by which appellant agreed,

in a certain event, to take appellees' lands at a price to be fixed by appraisers. The event having happened, the appraised value of the lands having been fixed, and the appellees now tendering their deed to the property, in accordance with the contract, we are of opinion that the contract is enforceable against the appellant, the person who signed the written agreement, and the person sought to be charged in this suit. In this important particular, the case of *Marqueze* v. *Caldwell*, 48 Miss. 30, seems directly in point.

2. The consideration of the remaining proposition, to wit, that the agreement signed by appellant is without consideration, and therefore void, may be regarded in the light of what has just been hereinbefore said, for much of that remark is pertinent here also. The contention here will be made more clearly to appear if we shall say that appellant maintains that there is a want of mutuality of consideration in the making of the agreement, exhibit A. Putting out of sight, then, for the present, the idea of the oneness of the contract as evidenced by the trust-deed signed by appellees, and the agreement signed by appellant, and the mutuality of consideration shown by the two writings taken together, let us see if appellants' position will be defensible.

We will have now a written agreement signed by appellant and delivered by him to appellees, and the same retained and acquiesced in by appellees until the time had arrived in which it was necessary to take steps to execute the agreement, though not signed by appellees. When the time for the execution of the agreement arrived, we have it indisputably made certain that appellees not only signified their purpose to stand by the agreement, but we find that they have actually executed it, so far as its execution at all depended upon their volition and action. After condition broken in the trust-deed, they promptly notified appellant of their inability to pay his debt; they joined with appellant in the appointment of the appraisers; they accepted the action of the appraisers as final and conclusive; and they made and tendered a proper deed of conveyance to the lands to appellant. The consideration in the agreement, on the part of appellees, was the performance of certain acts by them, and these acts, we find, they at once and promptly

performed, when the necessity arose for performance. The familiar illustration in the books meets the requirements of this case. If A. promise B. to pay him a sum of money if he will do a particular act, and B. does the act, the promise thereupon becomes binding, though B. at the time does not promise to do the act, for the performance invests the contract with a consideration, and this relates back, so making the original promise binding. 5 Pick. 379 ; 27 Iowa, 99 ; 48 Miss. 30, already cited.

The decree conforms to these views, and is,

*Affirmed.*