228 So.2d 814

**N. S. WHITMAN, Sr.**

v.

**Mrs. Elnora KNAPP.**

**1 Div. 440.**

Supreme Court of Alabama.

Nov. 20, 1969.

58

Kilborn, Darby and Kilborn, Mobile, for appellee.

———◆———

M. A. Marsal and Howell, Johnston, Langford & Finkbohner, Mobile, for appellant.

COLEMAN, Justice.

The purchaser appeals from a decree requiring him to perform an agreement to purchase a parcel of land on which a house is situated.

Under date of October 7, 1964, the purchaser, N. S. Whitman, signed an offer in writing to purchase the land for $25,000.00, cash, from the vendor, Mrs. Elnora Knapp. The purchaser paid $200.00 earnest money. Under the same date, the vendor signed a written acceptance of the purchaser's offer.

The circumstances leading up to the making of the contract were that the vendor had listed the property for sale with a real estate agent named Freeman. It appears that, under a multiple listing agreement, another real estate agent named Maisel obtained the offer from the purchaser. The purchaser personally inspected the house.

The offer gave to the vendor the choice of furnishing a "COMPLETE ABSTRACT OF TITLE," or an "OWNER'S GUARANTY OF TITLE." The contract indicates that by guaranty of title, the parties meant a title insurance policy.[1]

The vendor chose to furnish:
"5 B ( x ) TITLE GUARANTY POLICY"

The agent, Freeman, obtained a letter dated October 9, 1964, and signed:
"TITLE INSURANCE COMPANY

"/S/ H. Baumer
"Assistant-Secretary"

The letter recites, among other things, that:

"Subject to change in title we will issue our American Land Title Association Standard Owner's Policy Form B–1962 in the amount of $25,000.00 to the Grantee, on the title to the following described property located in the County of Mobile, State of Alabama, to-wit:"

The letter also recites that the guaranty will be subject to the requirement that 1964 ad valorem taxes be paid and that the policy will not cover any portion of the property located in the present right of way of the Moffat Road.

It appears that, after the purchaser had signed the offer and had inspected the

---

1. The offer to the vendor recites:
"5. You are to FURNISH: (Indicate your election in acceptance space below)
"A. COMPLETE ABSTRACT OF TITLE, within 30 days of your acceptance, for and subject to examination and approval by my attorney. Defects shall be pointed out to you in writing within 10 days of delivery to me of said abstract and you shall have 30 days thereafter to cure or correct same to the satisfaction of my attorney. I am to close within 10 days after said title has been declared by my attorney to be good and merchantable.

"(B.) OWNER'S GUARANTY OF TITLE within 30 days from your acceptance or at time of closing, or whichever shall first occur, in the full amount of the consideration. If any Mobile title insurance company refuses to issue a Title Policy because title is not good and merchantable, you are to have 30 days after notice of such refusal to cure and correct same. I am to close this transaction within 10 days of the issuance (or commitment to issue) of said Title Policy."

property, he told Maisel that he, the purchaser, could not complete the sale because his wife did not approve the purchase.

The vendor filed her bill for specific performance. In his answer, the purchaser avers that the vendor is not entitled to specific performance because it was represented to the purchaser by the agent of the vendor that the purchaser:

"  .   .   .   need not carry through with the purchase of the property in the event that he so decided and that in the event that he did not carry through with the purchase of said property that his loss would be the $200.00 as mentioned by the complainant in paragraph Four and that he would be relieved from any further liability.

"SIX

"The respondent alleges that pursuant to paragraph Six of the offer to purchase relied on by the complainant, the complainant and/or her agent, servant or employee, while acting within the line and scope of her employment, did elect to declare the offer to purchase rescinded by the forfeiture of the earnest money."

After hearing testimony ore tenus, the court decreed that the vendor have specific performance of the obligations of the contract imposed on the purchaser within thirty days after the vendor has deposited with the register a general warranty deed conveying to the purchaser good and merchantable title to the property; and, if the purchaser fail to accept the deed and pay the purchase price, less the $200.00 earnest money, the register is ordered to sell the property after notice; and, after application of the proceeds of sale to payment of costs and satisfaction of vendor's

demand, execution shall issue against respondent for unpaid balance of purchase price and interest.

The purchaser has appealed and assigns errors as follows:

*1 and 2.*

The purchaser assigns for error the action of the court in rendering a decree requiring respondent to perform the contract.

Purchaser says the contract provided that, upon his default, the vendor would have the option either: (1) to declare the contract void and the earnest money forfeited as liquidated damages; or (2) to pursue such other remedy to which vendor may be entitled.[2] Purchaser says that, on his default, vendor could choose either option but not both because they are inconsistent. Purchaser argues that vendor did choose the first option to declare the contract void and the earnest money forfeited, and, therefore, vendor cannot now seek the different remedy of specific performance.

In order to prove that vendor did choose the first option, purchaser relies on the testimony of the real estate salesman named Maisel. Purchaser contends that Maisel was the agent of vendor, and that Maisel, while acting within the line and scope of his authority as such agent, did tell purchaser that, by refusing to carry out his promise to purchase the land, he had forfeited the earnest money. Purchaser relies on a portion of Maisel's testimony on cross-examination as follows:

"Q.   Now, when you tell this Court that Mr. Whitman talked to you after this agreement was signed and told you that he did not care to go through with this, he asked you

2. The offer signed by purchaser recites: "6.  Should I fail or refuse to consummate this trade after title has been found to be good and merchantable, as herein provided, you shall have the option (1) to declare this contract void, and in that event my earnest money deposit shall be forfeited by me as liquidated damages for my breach of contract, or (2) pursue such other remedy in Law and/or Equity to which you may be entitled."

what he owed you and you told him this, 'Well, Mr. Whitman, you have forfeited your earnest money.' Did you not?

"A. Yes.

Immediately following the above quoted testimony, however, Maisel testified as follows:

"Q. So, you told Mr. Whitman, after he did not wish to go through with it, that he forfeited his earnest money? Didn't you?

"A. Yes. Yes, sir, I told him that, but that is not the entire conversation.

"Q. And then you further told . . .

"MR. KILBORN: Let the witness answer the question.

"MR. MARSAL I will ask him the question and then you will have an opportunity.

"Q. So, you did tell him that. And you tell us that you further told him that whatever she did would be up to her. That is what you are talking about the other part of the conversation?

"A. That is right."

Maisel had already testified on direct examination as follows:

"Q. All right. What happened after that conversation?

"A. Well, I talked to Mr. Whitman a few days after that and he told me, he asked me, well he told me that he didn't think he would be able to go through with the sale and he asked me what he would owe me and I told him that he didn't owe me anything, that the procedure would be that he would forfeit his earnest money and that it would then be up to Mrs. Knapp as to whether she wanted to take any further action. But I could not tell

him anything as to what her thoughts would be or what she would want to do.

"Q. Did you at any time represent or tell him that the only consequence of not going through with his agreement would be the forfeiture of the earnest money?

"A. No, I didn't tell him just that; I told him that he would lose the earnest money and, also, he would be subject to whatever Mrs. Knapp wanted to do."

We do not undertake to decide whether Maisel was the agent of vendor and had authority to make an election for her at the time Maisel had the foregoing conversation with the purchaser, Whitman, on which conversation the purchaser relies.

Even if Maisel had authority to speak for vendor, we are of opinion that Maisel's statements to purchaser do not amount to an election under the contract so as to prohibit the vendor from seeking the remedy of specific performance.

Maisel testified that he had told the purchaser, Whitman, ". . . . that he didn't owe me anything . . . . that he would forfeit his earnest money and that it would then be up to Mrs. Knapp as to whether she wanted to take any further action. But *I could not tell him* anything as to what her thoughts would be or *what she would want to do*." (Emphasis Supplied)

Maisel testified further that he told purchaser that he, the purchaser, ". . . . would be subject to whatever Mrs. Knapp wanted to do."

We are of opinion that the trial court could find that what Maisel told the purchaser was an express disclaimer by Maisel of any attempt to bind the vendor to an election of remedies which would prohibit her from seeking specific performance. If the trial court believed Maisel, the court could find that there was no election made

by Maisel on behalf of Mrs. Knapp. Maisel clearly said that he "could not tell him (the purchaser) what she (the vendor) would want to do." (Par. Added)

" . . . . the mere default of the purchaser, as shown by the bill of complaint, did not convert the earnest money into liquidated damages as a substitute for the equitable remedy, unless and until the vendor did some act, or made some declaration, indicative of his choice in that behalf. The retention of the money does not indicate such a choice, since it is entirely consistent with, and indeed a natural incident to, the enforcement of the contract as sought by the bill of complaint." Eaton v. Sadler, 215 Ala. 161, 165, 110 So. 10, 12–13.

■ The trial court's decree contains the following recital:

" . . . . The Court further finds that the acceptance and retention by the Complainant of the earnest money in the amount of TWO HUNDRED AND NO/100ths ($200.00) DOLLARS does not constitute an election by the Complainant and a waiver of her rights to enforce specific performance by the Respondent of the terms of said contract. . . . ."

Referring to the quoted finding of the court, the purchaser argues " . . . . that the trial court was in error in decreeing specific performance when in fact the trial court found in its decree that Appellee had elected to forfeit the earnest money."

What we have quoted from Eaton v. Sadler, supra, appears to us to be sufficient answer to the purchaser's argument.

The argument that the decree was erroneous on the ground that the vendor had elected to pursue an inconsistent remedy is not sustained.

### 3.

The purchaser asserts that the court erred in granting specific performance be-

cause there is no legal evidence to prove the allegation that ownership of the land in suit was in the vendor.

In the contract of October 7, 1964, the parties did not require vendor to furnish an abstract showing good, merchantable title of record. In paragraph (B.) of the offer signed by purchaser, which is quoted above, he agreed:

" . . . . I am to close this transaction within 10 days of the issuance (or commitment to issue) of said Title Policy."

■ We find nothing in pleading or proof to suggest that the purchaser raised in the trial court any objection that the letter of October 9, 1964, purporting to be signed by Title Insurance Company, was insufficient to constitute a "commitment to issue" a title policy as required by the contract of October 7, 1964.

Since this issue was not raised in the trial court, we do not think the purchaser can raise it here for the first time.

### 4.

■ The purchaser says that the court erred because there is no evidence that "such policy" was ever furnished to the purchaser within thirty days from acceptance of his offer to purchase.

This objection was not made in the trial court. What we said as to Assignment 3 applies equally to Assignment 4.

### 6.

The purchaser says that the court erred in requiring specific performance because the exceptions contained in the title binder vitiate any proposed policy of title insurance by excepting from the coverage of the policy portions of the property located in the present right of way of Moffat Road.

■ We say again that this objection was not raised in the trial court. As a

general rule, a defense not asserted in the trial court cannot be raised for the first time on appeal. Prowell v. Wilson, 219 Ala. 645, 651, 123 So. 38. The trial court must have notice of matters specially pleaded because we do not ordinarily review a case here on a theory or on an issue different from that on which the trial was had. Southern Ry. Co. v. McCamy, 270 Ala. 510, 514, 120 So.2d 695. Of course, there are exceptions to the general rule. For example, absence of an indispensable party may be noticed for the first time on appeal. Rollan v. Posey, 271 Ala. 640, 645, 126 So.2d 464.

Neither are we to be understood as saying that a trial court should or could decree that a purchaser must pay the agreed price for a parcel of land which the vendor does not own and to which he cannot convey good and merchantable title. In the instant case, we are not to be understood as holding that the trial court ought to require the purchaser to comply with the contract if, in fact, a substantial part of the lot is embraced in Moffat Road. We will not, however, reverse the trial court's decree ordering specific performance for an alleged defect in vendor's title which has not been presented to the trial court. We must presume that the trial court will do what equity requires and will compel the vendor to furnish the title insurance policy she agreed to furnish.

In a case of some antiquity, the Court of Appeals of Virginia had occasion to consider whether objections based on title defects could be raised for the first time on appeal. In a somewhat complicated suit, a decree of the trial court required a purchaser to perform his agreement to purchase certain land. In the Court of Appeals, counsel for the purchaser argued that it did not appear that the vendor had any good title which a purchaser shall be bound to accept, and that, as to one parcel called Greenwoods, the title appeared defective and doubtful. The appellate court said that the decree of the trial court was right, and, in answer to the argument of counsel for the purchaser, had this to say:

"It was objected, that there was not a perfect title to the lands. The answer given was a very satisfactory one; that there was not the slightest objection to the title in the bill, or any of the pleadings; that the parties had not put it in issue, and could not now raise the objection. When *Miss Young* and the representatives of *Blythe* filed their answers, setting out their titles, and tendering their deeds; if *Rogers* had doubted on the subject, he might have asked a reference of the title; and before the master, it might have been shown, that the defects now imagined, did not exist; the evidence might have been furnished there in a moment, which not being required, may not appear in this record. . . . ." Brockenbrough and Taylor v. Blythe's Ex'ers et al., 3 Leigh (30 Va.) 619, 641, 642.

Assignment 6 is not sustained.

### 7.

■ The court erred, says the purchaser, in ordering him to perform his contract, because the title binder shows that there is an unpaid tax assessment against the property which would constitute a lien on the property.

" . . . Generally speaking, the purchaser of property will not be compelled to take it subject to a lien or incumbrance. But it is well settled that, 'if an incumbrance can be removed merely by the application of the purchase money, and the court is able to provide for the conveyance of a clear title to the vendee, the mere fact that incumbrances exist which the vendor has not yet removed, or even is unable to remove without the application of the purchase money for the purpose, will not prevent a decree for a specific performance.' 25 R.C.L. 277, 278, § 78, citing Guild v. Atchison, etc., R. Co.,

**64**

57 Kan. 70, 45 P. 82, 33 L.R.A. 77, 57 Am.St.Rep. 312; Foor v. Mechanics' Bank, 144 Ky. 682, 139 S.W. 840, Ann. Cas.1913A, 714." (215 Ala. at 165, 110 So. at 13)

For aught that appears in this record, the trial court can and, we presume, will require payment of all tax liens out of the purchase money.

We are of opinion that error has not been shown.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, HARWOOD and BLOODWORTH, JJ., concur.