Plaintiff claimed and testified that in June, 1904, he sold to defendant a house and lot in Waxhaw, N.C. for $500, and defendant executed and delivered to plaintiff his sealed note for the purchase-price, as follows:
$500. WAXHAW, N.C. 27 July, 1904.
On or before 1 January, 1905, I promise to pay to the order of F. M. Sutton the sum of five hundred dollars, with interest at 6 per cent, from date. This note given for purchase-money for town lot and storehouse in Waxhaw, N.C.
Witness my hand and seal. D. S. DAVIS. (SEAL.)
That plaintiff had executed a deed for said lot to defendant under circumstances hereinafter set forth.
That the sale was for cash, but on defendant's request plaintiff consented that the money should be payable on 1 January, as indicated.
That when plaintiff made the offer to defendant, the defendant accepted same by letter, as follows:
WAXHAW, N.C. 13 July, 1904. (476)
MR. F. M. SUTTON, Monroe, N.C.
DEAR SIR: — In answer to your letter of July 12th, I will accept your offer and take the house and lot for $500, though it is a big price. Let me know when you will be ready to make the deed, so I will be ready to pay for same. Make the deed to D. S. Davis. If agreeable to you, I would prefer giving you my note for the amount until January 1st, and securing it by note we have at Savings, Loan and Trust Company at Monroe for $2,750, as the note will be due then. Of course, your note would draw interest from date, though either way will suit me. Just suit your convenience and let me know what day you will make the deed. If you cannot come out here, you can have the papers fixed up in Monroe *Page 364 
and turn them over to Messrs. Redwine Stack. Transfer the insurance over to them and you can let me know whether you will want the money or my note signed by myself and brother, D. S. Davis.
Please send me an order to Broom Garrison for the keys and give me a few days' notice if you want the money down. Your early reply will oblige me, as the improvements I will want will cost about $450, and I want to start at it right away. There is more to do than I first thought. Yours truly, T. L. DAVIS.
That pursuant to the directions contained in this letter, plaintiff executed and delivered a deed for the property to Redwine Stack, and told Mr. Redwine to hold the deed till the money was paid. If they said the title was all right, defendant was to give plaintiff his note, which he did soon thereafter.
That no one had ever informed witness that there was any deed missing in the line of his title till the fire occurred.
Defendant answered, admitting the execution of the note in (477) purchase of the lot; set up as a defense that as a part consideration of the trade, and as an inducement thereto, plaintiff represented that he had an unexpired fire policy on the property for $300, which would afford insurance to that amount till January 1st, when the money was to become due, and plaintiff was to hold this as a collateral; and in case of loss by fire, the amount realized from same was to go as a credit on the note.
The answer claimed this $300 as a credit, and offered to pay the $200 over and above such amount.
Defendant stated here that balance of contract was in letters, and admitted that the letter above set out was written by him for himself, and that he signed the name of T. L. Davis to it.
That it was understood between plaintiff and defendant that the deed was to be delivered whenever plaintiff could make defendant a good title, and defendant was to pay plaintiff then, and Redwine Stack were to pass on the title.
The defect urged by defendant against the title was as follows: That there was one missing deed which had been executed and delivered to C. Brown Sons, under whom plaintiff claimed by R. B. Redwine (of Redwine 
Stack) and T. J. Jerome, as commissioners, who had made sale of the property under a decree of the Court. The sale had been confirmed, title ordered and deed executed. That same having been lost or mislaid, the commissioners, Jerome and Redwine, executed a substitute, which plaintiff had when suit was commenced; but this second deed had not been made at the time the fire occurred.
Plaintiff denied that he had made any statement about any insurance policy. *Page 365 
It was further shown that soon after the trade, defendant took possession of the property, and had ever since exercised ownership and control over it; that he had made an addition to the building; had same insured, and collected $500 insurance thereon when it was destroyed (478) by fire in November, 1904. The policy being on the entire building and covering both the original building and the addition.
Issues were submitted and responded to by the jury as follows:
1. Was the deed, dated 23 July, delivered to Redwine Stack, attorneys for the defendant, by the plaintiff, to be held as an escrow and delivered to defendant upon the payment of the purchase-price, $500? Answer: Yes.
2. Was the building upon the lot described in the complaint destroyed by fire on the 25th day of November, 1904? Answer: Yes.
3. What was the value of the building on said lot on the 27th day of July, 1904? Answer: $400.
4. What was the value of said lot without said building? Answer: $100.
5. Was the plaintiff, at the commencement of this action, able to convey said lot in fee-simple? Answer: Yes.
6. Did the plaintiff represent to the defendant that the insurance policy would not expire before the first day of January, 1905, as alleged in the answer? Answer: No.
7. Did the plaintiff represent to the defendant that he, the plaintiff, would hold the unexpired insurance policy for the benefit of the defendant, as alleged in the answer? Answer: No.
8. Did the plaintiff represent to the defendant that if the house should be destroyed by fire before the maturity of the note, the amount of said policy, three hundred dollars, would be credited on the note sued on, and the defendant should be liable only for the balance of the note, as alleged in the answer? Answer: No.
9. Were the plaintiff's representations as to the insurance policy inducements to give the note and material parts of the consideration of the note sued on, as alleged in the answer? Answer: (479) No.
10. Was the fact that there was a storehouse on said lot a material inducement and a material part of the consideration of the note sued on, as alleged in the answer? Answer: Yes.
Plaintiff moved for new trial for errors, etc., which was refused, and plaintiff excepted.
Plaintiff then moved for judgment on the verdict for the amount of the note and interest. Refused, and plaintiff excepted.
On motion of defendant, there was judgment on the verdict for $100 *Page 366 
and interest thereon from 27 July, date of note, and also interest on $400 to time of fire.
Plaintiff excepted and appealed.
The house, a substantial part of the subject-matter, having been destroyed by fire during the continuance of the contract, the plaintiff seeks to recover the full contract price; and the defendant, maintaining his right to a conveyance of the lot, seeks to establish a credit on his title to the extent of the loss.
It may be well to note that defendant here is not asking to be relieved of all contract obligation concerning the property, as in Wells v. Calnan,107 Mass. 514, cited and relied on by defendant. But, on the facts established, he asks judgment that credit on his note be allowed for the loss; and on payment of the same, after such credit, that a good and proper deed be delivered for the lot "on which the destroyed building stood."
His defense, then, will rest on the theory described by Pomeroy as "partial specific performance with compensation," and the general (480) principle is stated by that author in his work on Contracts at sec. 434, as follows:
"When the vendor's title proves to be defective in some particulars, or his estate is different from that which he agreed to convey, or is subject to incumbrances or outstanding rights in third persons, or the subject-matter — generally the land — is deficient in quantity, quality, or value, it is plain that the contract cannot be specifically performed, according to its exact terms, at the suit of either party. In such a case there are only three possible alternatives for a court of equity to pursue: either to refuse its remedy entirely, or to enforce the contract without any regard to the partial failure, compelling the purchaser to take what there is to give and to pay the full price as agreed; or to decree a conveyance of the vendor's actual interest, and allow to the vendee a pecuniary compensation or abatement from the price, proportioned to the amount and value of the defect in title or deficiency in the subject-matter. In determining which of these alternatives to adopt, it is evident that, under all ordinary circumstances, the second one would be extremely unjust and inequitable; and yet it is occasionally resorted to when the vendee is not in a situation which entitles him to favorable consideration. The first alternative might often contravene the wishes and interests of both the parties, and cannot, therefore, be taken as the general or, at least, universal rule. Still, if the deficiency or defect is large and material, and *Page 367 
the purchaser is unwilling to accept a partial performance, this alternative must be adopted. The third is based upon equitable principles; it endeavors to preserve the rights of both the parties, and is therefore constantly resorted to and applied by courts of equity in aid of a vendee, and sometimes, although under more and greater restrictions, in aid of the vendor. There are circumstances, however, under which even a vendee is not allowed to avail himself of its doctrine." (481)
The principle here stated has been usually applied to cases where the defects urged as a ground for compensation existed when the contract was made; but, when the circumstances required, it has also been extended to cases in which the defects arose afterwards.
This was so held in a case decided by the Supreme Court of Georgia,Phinizy v. Guernsey, 111 Ga. 346. In that well-considered opinion, Cobb,J., for the Court, said:
"The text-books and cases sited show that the doctrine of specific performance with compensation for defects when the vendor cannot convey exactly what his contract calls for, is thoroughly established, and it is in rare cases where the Court will refuse such relief at the instance of the vendee. It is true that in nearly if not all of the cases the inability on the part of the vendor to convey what the contract called for arose from some fact which was in existence at the time the contract of sale was made, such as defects in the title to a part of the premises, deficiency in quantity or quality or value of the property which was the subject-matter of the contract, and the like. There does not seem, however, to be any good reason why the principle should not be applicable where the inability of the vendor to convey a part of that which his contract stipulated for arose, subsequently to the making of the contract, out of some transaction in which the vendee was not involved; and the fact that the vendor was himself without fault would not seem to be an obstacle which would prevent the application of the rule. Requiring a vendor to pay damages to his vendee for a failure to convey property which, subsequently to the execution of the contract of sale, was destroyed by fire, is no greater hardship than requiring a vendor to pay damages on account of his having ignorantly, though honestly, and after the exercise of all possible diligence, bargained away something which he did not own, but which he believed was his own. That he would be required (482) to pay damages in the latter case no one will doubt; that he should be in the former case ought not, it would seem, to be questioned upon principle."
While this principle is well established, its application is not always permitted as a matter of absolute right, but like the general doctrine of specific performance itself, of which this is a part, its application rests in the sound legal discretion of the Court. As suggested in the extract *Page 368 
from Pomeroy, "there are circumstances under which even a vendee is not allowed to avail himself of its doctrine."
And in sec. 344, this author further says: "In general, the purchaser is entitled to compensation for a deficiency except where the language of the agreement cuts off the claim; but this rule is sometimes, from the circumstances of the case, departed from, and the vendee left to the alternative of abandoning the contract entirely or of having specific performance without abatement of the price."
The Court is clearly of opinion that the present case comes within the exception here suggested, and that on the facts established by the verdict, taken in connection with the admissions of the parties in the pleadings and testimony, the plaintiff is entitled to judgment for the amount of the note and interest, and without the reduction claimed by defendant.
The facts disclose that the plaintiff is without fault or delay in the matter, having done all that he had agreed to do. He had executed and delivered the deed to Messrs. Redwine Stack, the parties designated, to be delivered to defendant when he paid the purchase-price. He had the title at the date of the contract; he had it when the suit commenced, and has it now, and is ready and able to convey the lot to defendant when the purchase-price is paid.
Under the special facts and circumstances of this case, the (483) suggested defect is not deserving of serious consideration. A deed, in the line of plaintiff's title, which had been executed by Court commissioners appointed in judicial proceedings, had been lost or mislaid. There is no doubt as to the fact that these judicial proceedings were in all respects regular. The sale had been confirmed and title ordered and made pursuant to the order. The commissioners were Messrs. Redwine and Jerome, Mr. Redwine being the attorney with whom the deed of plaintiff to defendant and title papers were left. There was nothing to be done except for Mr. Redwine to call in his associate in the matter, fill out a blank deed and sign same, and the alleged defect would have disappeared.
As heretofore stated, such a defect, under the circumstances, was not of the substance, and should not be allowed to have substantial effect on the rights of the parties, either plaintiff or defendant.
The plaintiff, then, has been without fault in respect to the title or delivery of the deed; and immediately after the contract the defendant entered into possession and control of the property as owner. He repaired and added to the building; has occupied and used it, and placed an insurance policy on it; and when the same was destroyed, he collected the amount of the policy, which he retains. He is here now maintaining that he has a right to the lot under the contract, and prior to the time *Page 369 
this contract was made there had never been anything required to secure a perfect title but the payment of the purchase-money — payable by himself.
It is undoubtedly the general rule "that when property is destroyed by fire, the loss will fall on him who is the owner at the time."
It is also a well recognized principle that where there is a contract for the sale and conveyance of realty absolute and binding on the parties, equity, for most purposes, will consider the contract as (484) specifically executed; the vendee will become the equitable owner of the lands and the vendor of the purchase-money. After the contract, the vendor is the trustee of the legal estate for the vendee.
Haughwout v. Murphy, 22 N.J. Eq., 531; Brewer v. Herbert, 30 Md. 301;Wetzler v. Duffy, 78 Wis. 170; 2 White Tudor's Leading Cases in Equity, part II, pp. 1108, 1109; Bispham Equity (6 Ed.), sec. 364; Pomeroy Eq. Jur., sec. 1406, note 2.
Pursuing the principle in White Tudor's Leading Cases, supra, it is said: "It was declared in like manner by Duncan, J., in Richter v. Selin, that `equity looks upon things agreed to be done, as actually performed.' Consequently, when a contract is made for the sale of land, equity considers the vendee as the purchaser of the estate sold, and the purchaser as a trustee for the vendor for the purchase-money. So much is the vendee considered in contemplation of equity, as actually seized of the estate, that he must bear any loss which may happen to the estate between the agreement and the conveyance, and will be entitled to any benefit which may accrue to it in the interval; because by the contract he is the owner of the premises, to every intent and purpose, in equity.
"It is accordingly well settled that if the premises are consumed by fire subsequently to the sale, or are swept away by a flood, or if they are injured by a tort feasor, the loss will fall on the purchaser, who can neither make the deterioration a ground for refusing to accept a conveyance nor rely on it as a defense to an action brought for the purchase-money."
The principle does not in strictness apply here, because the contract, while binding, was not absolute and complete. Lombard v. Congregation,64 Ill. 477.
The deed, being in escrow, to be delivered on condition, no title passed till condition was performed. Craddock v. Barnes, 142 (485) N.C. 89. But the defendant, having taken possession of the property as owner, and having exercised and enjoyed all the authority and benefits of absolute ownership, the case is very nearly within the principle; and, on the entire facts and circumstances, heretofore stated, we hold that the doctrine of compensation does not obtain, and that *Page 370 
plaintiff should have judgment for the amount of the note and interest without reduction. Appellant will pay costs of appeal.
Judgment Modified.
Cited: Whitlock v. Lumber Co., 145 N.C. 126; Lancaster v. Ins. Co.,153 N.C. 290.
(486)