## Foor, et al. v. Mechanics Bank & Trust Co., et al.

(Decided October 5, 1911.)

## Appeal from Daviess Circuit Court.

1. Statutes of Frauds.—A contract for the sale of real estate is not within the statutes of frauds when it contains the means of identifying the property, as where it is described as the place where the vendors now live.

2. Specific Performance.—Specific performance may be enforced although there may be a lien on the property, if the money which the vendor is to pay, is sufficient to discharge the lien.

3. Judicial Sale.—A judicial sale will be set aside where the property was sold at a great sacrifice, and the owner was prevented from being present at the sale and bidding, by an accident.

W. FOSTER HAYS, C. W. WELLS for appellants.

HURST & INGLEHART, C. M. FINN, DEAN & DEAN for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Appellant, Lula Foor owned about one hundred and eleven and three-fourths acres of land about seven miles from Owensboro, Daviess County, Kentucky. She and her husband placed mortgages on this property amounting to about $1,800. On March 10th, 1910, appellee, Mechanics Bank & Trust Company brought an action to enforce the mortgage liens. On March 8, 1910, two days prior to the institution of that action, one D. C. Benton, of Cloverport, Kentucky, prepared and signed a written proposition which he sent to J. A. Harris, a real estate agent in Owensboro, who represented both appellants and Benton, for the purchase of the land. This proposition, in so far as it applies to the question at issue, is as follows:

"March 8th, 1910.

"J. A. Harris:

"I propose and agree to trade my property located in Cloverport, Ky., being the same property purchased of the Illinois Life Insurance Company, and more particularly described as follows: The main lot where the large house stands is 100 by 100 feet on the corner of Houston and Third streets in said town, and 20 by 20 ft. running from Third street back 200 ft. for the farm of Mrs. Lula

Foor, wife of J. M. Foor, said farm being located about two and one-half miles from Ensor, and where Mrs. Foor now lives. Being the same farm this day shown to me by yourself and Mr. Foor containing 111 3-4 acres, this includes about one acre used as private cemetery by the Gillim family. I agree to give you my property above mentioned clear of all encumbrance with a good and sufficient deed for $1,900, payable, $100 cash, and $1,800 in five equal annual installments of $360 each, due and payable on or before one, two, three, four and five years from this date with 6 per cent. interest per annum, payable semi-annually and you are to deliver to me a good and sufficient deed clear of all encumbrance upon my delivery to you of deed to my property, $100 in cash and the five notes referred to.''

Lula Foor and her husband accepted this proposition in writing on the day it was made, and immediately signed a deed for the farm and tendered it to Benton, but he refused to accept it and to convey his property to them. Mrs. Foor and her husband then filed an action to enforce specific performance of the contract. They alleged that Benton knew of the mortgages upon the farm at the time he made the proposition; that they were ready and willing and had been at all time theretofore to comply with their part of the contract, and would remove the mortgage lien in favor of the Bank & Trust Company from the farm. The contract also provided that possession of the farm was to be given Benton within ten days from the date of the writing, and it was alleged that the farm was turned over to Benton on March 14, 1910, and he had been in the possession of the farm from that time to the date of the filing of the petition, May 25, 1910. The contract also provided that Benton was to remain in possession of the Cloverport property from that date to the end of the year, if he desired to, paying $15 a month rent, and it was alleged that Benton was in possession of both pieces of property and had paid no rent therefor. The lower court sustained a demurrer to this petition, but we do not understand why it was done. Benton's counsel contend that the contract was within the Statutes of Frauds and Perjuries, as the property was not sufficiently described to make the contract binding, and that Benton could not have been forced to perform his part of the contract because of the mortgage liens on the farm. Counsel is in error as to the first proposition. The writ-

ing gives the dimensions of the lots in Cloverport and says they are located on the corner of Houston and Third streets, and that they were purchased from the Illinois Life Insurance Company. The farm is described as containing 111 3-4 acres which include an acre used as a private cemetery by the Gillim family, as being the farm shown to Benton by Mr. Foor and the agent, J. A. Harris, on the day the proposition was made, and as the place where Mrs. Lula Foor and her husband, J. M. Foor now live, that is, lived on March 8, 1910. In our opinion, the means of locating the houses and lots in Cloverport and the farm were given in the writing, that is, the writing so described the properties as to enable one to locate them without trouble. See the cases of Campbell v. Preece, 133 Ky., 572; Bates v. Harris, 144 Ky., 399, 138 S. W., 276, and Price v. Hays, opinion delivered September 26th, 1911.

With reference to the other question, Benton admits by his demurrer that he knew of the mortgage liens on the farm when the trade was made and that he purchased it with this knowledge, but it seems to have been his understanding that appellants were to remove the mortgages. This contract required simultaneous action on the part of both parties; one was to convey property to the other and do certain other things which were required by the contract to be done at one and the same time. The demurrer admits that appellants were ready at that time to have the liens removed. The purchase money which Benton was to pay amounted to more or at least to as much as the liens. In 36 Cyc., 639, in speaking of specific performance, said:

"Mortgages or other encumbrances which can be discharged out of the purchase money do not constitute a bar to the action."

On page 745 of the same book it is said:

"In a suit either by vendor or vendee, where the encumbrance can be discharged by mere payment thereof, and are not larger in amount than the purchase money due, the court in its decree may direct the payment of a sufficient part of the purchase money for the purpose to the holders of the encumbrances instead of to the vendor, even though such holders are not before the court."

This action was consolidated with an action of the Bank & Trust Company to enforce the mortgage liens,

therefore, we conclude that the court erred in sustaining a demurrer to appellant's petition.

The court rendered a judgment in favor of the Bank & Trust Company for its debt, interest and cost, and directed the commissioner to sell the farm or so much of it as was necessary to pay the Bank & Trust Company's debt and the cost of sale. The Band & Trust Company's debt amounted to about $1,900 at the time of the sale, and when the farm was sold it was purchased by H. A. Birkhead at that price, being the only bid made. Appellants ask that the sale be not confirmed for several reasons, but we need to mention but one. Appellants claim they were prevented from being at the sale and bidding the property in for their protection, by casualty, misfortune and inadvertance. The testimony shows that Mrs. and Mr. Foor were in town on the day of the sale; that just before the sale Mr. Foor asked the commissioner who was to make the sale, at what time he would begin and he told him at about eleven o'clock. He then asked him how much time he would be given within which to execute the bond, but the commissioner did not answer, but referred him to the attorney, Mr. Iglehart, and he asked him the same question and received as an answer that he would not be given five minutes. Mr. Foor then went immediately to J. A. Bell's office just across the street from the court house, and got him to agree to go on his bond. Foor and his wife then returned to the court house where the sale was to be made, and just as they approached the land was "knocked off" to Birkhead at the price stated. Appellants' attorney then asked the commissioner to reopen the sale, but the commissioner said he would not do it without the attorneys for the Bank & Trust Company agreed to it, which they refused to do. The commissioner says that when he went to the court house, he looked at his watch and found that it was just five minutes of eleven o'clock; that he went into the clerk's office and was there a short time and some one out of the room called to him stating that if he desired to begin his sales at eleven o'clock he had better come on; that he had about eighteen sales to make that day. He commenced the sales by offering a tract of land in the case of Smith v. Smith, but some one asked him to pass it, which he did, and then took up the sale of the property in the case at bar and consumed about three minutes in making the sale. Several witnesses testified that the sale was made before eleven o'clock, some say that it was made after

that hour and some say at that hour. This difference, however, appears to have been brought about by the fact that the hands on the four faces of the court house clock varied as much as five minutes. It is evident that the commissioner and the attorneys for the Bank & Trust Company knew Mrs. Foor and her husband were in town and wanted to be present at the sale to bid on the property, presumably for their protection. They testified that if they had been given an opportunity they would have made the land bring $3,500 or $4,000, and that at all events, they were prepared to give a bond with J. A. Bell, who is conceded to be solvent, as surety for the amount of the debt, interest and cost. The land was appraised at $2,500 and brought $1,924. The record shows that the land had been sold to Benton for $4,900, estimating the Cloverport property at $3,000. Several of appellants' witnesses testified as to the value of the land, the lowest valuation being $3,000 and the highest $4,500. Seven or eight of appellee's witnesses who testified as to the value, varied in their estimation from $2,200 to $2,800. Considering all the testimony, we think it clear that the property was reasonably worth $3,000 at the time of the sale. Appellants testified that they would give $3,500 for it on a resale, or would, in all events, make it bring the debt, interest and cost, so as to save them great sacrifice.

In the case of Spinks v. Raison, opinion delivered September 26, 1911, this court said:

"The bidder at the sale is simply one who has made an offer for the property until his bid is accepted by the court and the sale confirmed. As to whether or not the sale should be confirmed, the chancellor must exercise his discretion; and when a party is prevented from being at the sale by sickness and by reason of this the property is sold at a sacrifice, it cannot be said that the chancellor abused a discretion in ordering a re-sale of the property," etc.

The commissioner and attorneys for the Bank & Trust Company knew that the Foors were in town for the purpose of attending the sale and protecting themselves. If the commissioner had not deferred the sale of the land in the case of Smith v. Smith, appellants would have reached the place of sale in time to bid on the property. The sale, according to the commissioner was made in about three minutes; and it is doubtful, from the testimony, whether the hour of eleven had arrived, at which time he told Mr. Foor he would begin the sales. The tes-

timony shows that it was a mere accident that appellants did not reach the court house before the sale; and it is certain that the property did not bring its value, and it would be a misfortune to appellants to have their property sacrificed at the amount bid by Birkhead. The Bank & Trust Company's debt is drawing interest, and on another sale it will surely be able to collect all that will be due it. No one will be injured by a re-sale of the property, except Birkhead who obtained a valuable piece of property for a small amount and should have surrendered when appellants and their counsel asked for a re-sale. This court has decided several times that inadequacy of price alone was not sufficient to authorize the court to set aside the sale, but that coupled with any other reasonable ground was sufficient.

For these reasons the judgment of the lower court is reversed and remanded for further proceedings consistent herewith.