THE FARMERS TOBACCO WAREHOUSE COMPANY v. EASTERN CARO-
LINA WAREHOUSE CORPORATION AND TOBACCO GROWERS' CO-
OPERATIVE ASSOCIATION.

(Filed 26 May, 1923.)

**1. Fires—Vendor and Purchaser—Contracts to Convey—Owner.**

Where valuable buildings on real estate for which a bargain of sale is
pending are a principal and substantial inducement to the contract of
purchase, and are destroyed by fire without the fault of either of the
parties, the loss will fall upon the one who is the owner of the property
at the time of the fire; and if the negotiations at or before that time have
resulted in an enforceable and binding agreement to convey, and there is
no express stipulation to the contrary, the proposed vendee or holder of
such agreement will be regarded as the owner of the property.

**2. Same—Vendor's Title.**

Where the vendor, in a contract to convey lands, the buildings on which
are a material and substantial inducement for the transaction, are de-
stroyed by fire, is not at the time of the fire in a position to convey the
property for the lack of title or legal right thereto, or if the contract is
incomplete and unenforceable for any reason, the loss will fall on the
vendor, and the vendee may elect to proceed no further in the matter.

**3. Deeds and Conveyances—Contracts to Convey—Description of Land—
Sufficiency.**

A contract to convey an established and known tobacco warehouse, by
name, it "being the vendor's warehouse and plant, meaning thereby the
actual warehouse and storehouse, necessary equipment, furniture, fixtures,
platform, sidings, tracks," known as the Farmers Warehouse, New Bern,
N. C., etc., etc., is sufficiently described and identified to constitute a bind-
ing agreement to sell and convey, and is not unenforceable by reason of
indefiniteness of identification, and when necessary and proper and other-
wise enforceable, the courts will order a survey to be made in the enforce-
ment of the contract in the vendee's favor.

**4. Same—Statute of Frauds—"Signed"—Subscribed.**

The statute of frauds requiring that contracts for the sale of lands, etc.,
to be enforceable must be in writing, does not require that the writing
must be subscribed by the parties, but only that it be signed, and where
the description of the lands appears below their signatures, and it clearly
appears that this was intended by the parties as a part of the contract, it
comes within the intent and meaning of the statute.

**5. Deeds and Conveyances—Contracts to Convey—Title—Encumbrances
—"Owner"—Specific Performance.**

Where the parties to a contract to convey lands recognize the existence
of certain mortgage liens thereon, and with the vendor's knowledge of the
amounts and provision made therefor, agree to the conveyance of the
equity of redemption, these encumbrances do not fall within the principle
that encumbrances in a substantial sum, unknown to the vendee and
indeterminate as to amount, will avoid the contract as to his rights; and
where it is made to appear before a court of competent jurisdiction that
the encumbrance immaterially exceeds the purchase price, or that full

and adequate protection can be afforded, or that the vendee will get the
title he has contracted to receive, specific performance will be decreed by
the Court, with proper provision made for clearing the vendee's title; this
being especially insistent where the vendee has gone into possession fully
aware of the encumbrances and has been exercising over the property
full control as owner.

6. **Same—Fires.**

The owners of a warehouse for the sale of leaf tobacco contracted to
convey the same subject to enumerated liens thereon, with provision that
they should not exceed one-half of the value of the property to be after-
wards ascertained by a designated method, and the purchase price finally
established was within an inappreciable amount of the encumbrances.
thereon. The lienors gave assurance that they were at all' times ready,
willing, and able to modify the amounts of their liens, so as to enable the
vendor to comply with his contract, with other evidence that the vendee
would get an unencumbered fee-simple title, which it would have taken
except for a delay caused by the vendor, and pending these conditions the
warehouse, etc., was destroyed by fire, without fault on the part of the
parties to the contract, while the vendee was in possession, exercising full
rights of ownership: *Held*, the contract was enforceable against the
vendor, and the vendee is regarded as the owner upon whom the fire loss
must fall.

APPEAL by defendants from *Grady, J.,* at January Term, 1923, of
CRAVEN.

Controversy without action, submitted on case agreed. The facts
submitted by the parties, omitting for the present certain exhibits
annexed thereto and made a part of the same, are as follows:

"It is agreed by the parties hereto that the facts hereinafter set forth
constitute the basis of a real controversy between the parties hereto, and
the said facts are hereby submitted to the court for its determination, as
provided by statute, in a controversy without action.

"1. That under date of 7 April, 1922, the plaintiff and Tobacco
Growers' Coöperative Association, acting on behalf of itself and Eastern
Carolina Warehousing Corporation, entered into an agreement for the
purchase and sale of real estate, a copy of which agreement is hereto
attached, marked Exhibit 'A,' made a part of this statement of facts,
and asked to be here read as though here set forth in full.

"2. That subsequently the parties aforesaid agreed that the transfer
and settlement should be made in accordance with the terms of method 1
of said contract, as contained in Exhibit 'A.'

"3. That it was at all times the understanding and agreement of the
parties that under method 1 a mortgage or deed of trust 'for a reason-
able amount' fairly and properly means a mortgage or deed of trust not
in excess of 50 per cent of the determined value of the property. The
parties now so agree that the term 'for a reasonable amount' properly
and clearly means for an amount not in excess of 50 per cent of the
agreed value of the property.

"4. That the plaintiff had caused an abstract of title to be furnished to defendants prior to 1 August, 1922; that the property to be conveyed by plaintiff was described in said abstract in accordance with diagram and description appearing on page attached to this statement, marked Exhibit 'B,' and asked to be here read as though here copied in full; that the said abstract was approved by counsel for defendants as to title, conditioned on the compliance with the terms of the contract hereinbefore set forth as Exhibit 'A' as to encumbrances.

"5. That under date of 13 November a supplemental agreement was made between the parties, said supplemental agreement being thereto attached, marked Exhibit 'C,' made a part of this statement of facts, and asked to be here read as though here copied in full. No plat was attached to this agreement as therein set forth, but survey of property of plaintiff had been made and plat furnished to defendants, substantially identical with plat appearing on Exhibit 'B.'

"6. That under date of 22 November attorneys for defendants addressed and forwarded to attorneys for plaintiff a letter, copy of which is hereto attached, marked Exhibit 'D,' made a part of this statement of facts, and asked to be here read as though here copied in full.

"7. That on 1 August, or thereabouts, the defendants went into actual physical possession of the tobacco warehouse located on the property described in Exhibit 'B,' and have had possession of said warehouse since 1 August until the said warehouse was destroyed by fire on 1 December, 1922, hereinafter set forth.

"8. That defendants, or either of them, without other expressed permission or consent than that contained in the agreements hereinbefore set forth, removed certain personal property used in connection with the operation of the said warehouse, to wit: fourteen tobacco trucks, and shipped same away from New Bern to another point where defendants were operating.

"9. That defendants have, without expressed consent or permission other than that contained in the agreements herein set forth, removed two large sets of tobacco scales from said warehouse, which said scales were built in said warehouse upon a cement foundation, and defendants have shipped said scales away from New Bern to another point where defendants are operating.

"10. That on or about 9 August, at the request and requirement of defendants, plaintiff agreed to the attachment of clause to all policies of fire insurance on property described in Exhibit 'B,' which said clause as attached to said fire insurance policies bore the following words: 'It is understood and agreed that contract has been made for sale of this property, and loss, if any, shall be payable to owners as their interest may appear,' or words substantially similar thereto.

"11. That on 1 December, 1922, representatives of plaintiff called at the office of counsel for defendants in Raleigh, N. C., and discussed with said counsel the question of completing transfer contemplated by the parties, and requested and received from said counsel information concerning the various methods of settlement outlined in Exhibit 'A' attached hereto; method 1 having been theretofore selected; that the said representatives of plaintiff did not at that time definitely describe the property to be conveyed for the reason that the map of said property had been forwarded to the Richmond office of defendant association, and that said representatives of plaintiff departed stating to said counsel for defendants that they would advise definitely at a later date regarding the method of transfer to be followed, if they desired to change the same.

"12. That on 1 December, 1922, a general conflagration occurred in New Bern, N. C., and, without fault on the part of plaintiff or defendants, all of the buildings located upon all the property described in Exhibit 'B,' among which was the tobacco warehouse occupied by defendants as aforesaid, were completely destroyed by fire. The warehouse building so destroyed constituted a material part of the value of the real estate to be conveyed.

"13. That the abstract of title as submitted by plaintiff to defendants, as hereinabove stated, set forth and showed the following encumbrances against the property described in Exhibit 'B': Deed of trust to W. B. R. Guion and H. P. Whitehurst, acknowledged 31 January, 1919, for $18,000, and recorded in Book 227, page 265; deed of trust from Farmers Tobacco Warehouse Company to T. A. Uzzell, trustee, for $5,000; judgment in favor of Planters Warehouse Company for $500, with interest from 6 February, 1922, recorded in Judgment Docket 'Q,' page 298; deed of trust from Farmers Tobacco Warehouse Company to R. E. Whitehurst, trustee, dated 14 March, 1922, and recorded in Book 249, page 105, securing $23,000; county taxes for the year 1921, $243.36; city taxes for the year 1921, $221. Total, $46,964.36.

"The foregoing encumbrances appear on the records of Craven County and the city of New Bern, and are liens on all the property described in Exhibit 'B,' and on each separate part thereof.

"14. Each of the fire insurance policies on the property located within the boundaries set forth in Exhibit 'B,' among which were the policies amended as heretofore set forth, had been assigned for the benefit of the holders of the aforesaid encumbrances, and each of the said policies had affixed to it a clause directing that loss should be payable for the benefit of said creditors. On the said warehouse building there was fire insurance in the amount of $24,500.

"15. That on 13 November, 1922, and at all times thereafter up to and including 1 December, 1922, there was due and unpaid the following

amounts on the said encumbrances: Deed of trust to W. B. R. Guion and H. P. Whitehurst, acknowledged 31 January, 1919, for $13,000, and recorded in Book 227, page 265; deed of trust from Farmers Tobacco Warehouse Company to T. A. Uzzell, trustee, for $5,000; judgment in favor of Planters Warehouse Company for $............ (paid), with interest from 6 February, 1922, recorded in Judgment Docket 'Q,' page 298; deed of trust from Farmers Tobacco Warehouse Company to R. E. Whitehurst, trustee, dated 14 March, 1922, and recorded in Book 249, page 105, securing $23,000; county taxes for the years 1921 and 1922, $415; city taxes for the years 1921 and 1922, $378; interest due on encumbrances, $2,500. Total, $44,283.

"All the aforesaid sums were due and payable on 13 November, on 1 December, and all times between said dates; all were secured by liens or encumbrances upon all of the property described in Exhibit 'B,' and upon each part thereof. That of the aforesaid encumbrances, the Peoples Bank of New Bern was the holder as security of the deed of trust for $13,000, and interest thereon; and the Citizens Savings Bank and Trust Company was the holder of the deed of trust for $5,000 and deed of trust for $23,000, with interest thereon. That T. A. Uzzell is president of both the Peoples Bank and Citizens Savings Bank and Trust Company, and that W. H. Henderson is the cashier of the Citizens Savings Bank and Trust Company. That the two persons named as officers of the said bank had verbally assured the vendors that they would arrange the indebtedness to the respective banks in such a way as to enable the vendors to comply with the agreements set out in method 1 of Exhibit 'A.'

"16. That all of the aforesaid sums were secured by encumbrances or liens on the property proposed to be conveyed by plaintiff to defendants in accordance with the supplemental agreement of 13 November.

"17. On 20 December, defendants notified plaintiff that because of the destruction of the buildings on the real estate of plaintiff the defendants would not proceed with the contract of purchase, and offered to plaintiff reasonable compensation for the use of the property. The attorneys for defendants sent to attorney for plaintiff letter as is shown by copy attached hereto, marked Exhibit 'E,' made a part of this statement of facts and asked to be here read as though here copied in full.

"Upon the foregoing facts the court is asked to render judgment as follows: If the court is of the opinion that the contract as set forth in the supplemental agreement of 13 November should be specifically performed, that it render judgment requiring defendants to perform said contract in accordance with method 1 upon tender of proper deed and proper adjustment of the fire insurance collected, together with judgment for costs of this action.

"If the court is of the opinion that the said contract should not be specifically performed, then to render judgment accordingly, relieving defendants of all obligations except the payment of reasonable compensation for occupancy of the property and against plaintiff for costs of this action."

There was judgment for plaintiff, and defendants excepted and appealed.

*Whitehurst & Barden for plaintiff.*

*Burgess & Joyner, Aaron Sapiro, and Lawrence L. Levy for defendants.*

HOKE, J.    It is ordinarily true that where, pending a bargain for the sale and purchase of real estate, valuable buildings thereon which are a principal or substantial inducement to the contract are destroyed by fire without the fault of either of the parties, the loss will fall on the one who is the owner of the property at the time of the fire, and in such case, if the negotiations have resulted in an enforceable and binding agreement to convey, the courts, by the weight of authority, and in the absence of an express stipulation to the contrary, will consider the proposed vendee or holder of such agreement as the owner of the property within the meaning of the principle. In further illustration, the cases on the subject hold that if the vendor is not at the time in a position to convey the property, not having acquired the title or legal right thereto, or if the contract is incomplete and unenforceable for any valid reason, the loss will fall on the vendor, and the vendee may elect not to proceed further in the matter. *In re Sermon's Land,* 182 N. C., 122-127; *Sutton v. Davis,* 143 N. C., 474; *Fonts v. Fondray,* 31 Ok., 22; *Foor et al. v. Mechanics Bank,* 144 Ky., 682; *Sewell v. Underhill,* 197 N. Y., 168; *Brewer v. Herbert,* 30 Md., 301; Pomeroy on Contracts, secs. 434-435; 25 R. C. L., pp. 555 and 556.

In the case cited of *In re Sermon's Land,* 182 N. C., at p. 127, the positions referred to are stated as follows: "It is very generally held that where pending a contract for sale of improved real estate, the buildings thereon are damaged by fire, the loss, as a rule, must fall upon the owner, and if the destruction wrought is such as make a material change in the property or substantially impair its value, specific performance will not be enforced at the instance of the vendor, and the bidder will be relieved of his obligation. By the weight of authority on the subject, when there exists a binding and enforceable contract to convey, the vendor being in the present position to make title, the purchaser is regarded as the owner and the loss must fall on him. But where the vendor has not yet obtained a title, or where the bargaining

between the parties has not been such as to give the proposed purchaser any interest in the property, or the contract is otherwise incomplete, the loss, as stated, falls on the vendor, and under the circumstances indicated he may not insist on performance."

It is objected for defendant that at the time of the destruction of the warehouse by fire there was no binding or enforceable agreement between the parties: First, because the same was not sufficiently definite as to the property to be conveyed; second, because at the time of the loss there were encumbrances on the property, secured by mortgages and deeds of trust, for debts past due and taxes accrued, contrary to the stipulations of the agreement, but in our opinion neither position should be sustained.

From a proper perusal of the facts, including the exhibits made a part of the case submitted, it appears that on 7 April, 1922, plaintiff, the owner, contracted to sell defendant a piece of property situated in New Bern, N. C., and generally known as the "Farmers Warehouse" (at a provisional price of $100,000, this to be finally fixed at a fair market value to be determined by a board or boards of arbitration selected by a designated method), and further described in the agreement as the plaintiff's "warehouse and plant, meaning thereby the actual warehouse and storehouse, necessary equipment, furniture, fixtures, utensils, platforms, siding, tracks, and lands on which they are situated, with all appurtenances thereof." That the agreement contained, among others, the stipulation "that if there was a mortgage or deed of trust on the property for a reasonable amount it may remain on the property provided no part thereof matures prior to 30 December, 1923," and in reference to this stipulation the parties in the case have agreed that the terms "for a reasonable amount" shall be construed to mean "an amount not in excess of fifty per cent of the agreed value of the property." That prior to 1 August, 1922, plaintiff caused an abstract of title to be furnished defendant which was approved by defendant's counsel as to title, which abstract contained also a diagram describing the property, the subject of the trade, and showing also the encumbrances then existent on the property of mortgages, and deeds of trust securing debts past due and accrued taxes to the amount of $44,283, and controlled principally by the Peoples Bank and Citizens Bank and Trust Company of New Bern, N. C., T. A. Uzzell being at the time president of both institutions and W. H. Henderson being cashier of the "Citizens Bank and Trust Company."

It further appears that on 22 November, 1922, the parties entered into a supplemental agreement, duly executed, reciting that whereas: "The owner and the association have executed a certain instrument known as the Standard Association, whereby the warehouse is to be sold

to the association at a fair market value to be fixed by arbitration, the parties hereby agree that the fair market value of the property embraced in the aforesaid agreement and completely and accurately described in a plat or drawing of such property attached hereto, together with all rights, privileges, and appurtenances to said property, is $43,500"; and in reference to this the case agreed states that "no such plat was ever attached to this agreement, but a survey had been made and a plat furnished to defendants." That under and by virtue of these contracts and agreements, the defendant, on 1 August, 1922, entered in possession and control of the property, using same as their own, and continued so to use and control it down to and at the time of its destruction, among other acts, shipping away fourteen tobacco trucks and removing two large sets of tobacco scales from their cement fastenings, and shipping them to other points for use in their business; and further, on 9 August, 1922, plaintiffs had agreed to attach to the fire insurance on the building a clause as follows:

"It is understood and agreed that contract has been made for the sale of this property, and loss, if any, shall be payable to owners as their interest may appear." . . . These policies in question being for $24,500, held at the time by the encumbrancers, and containing an express stipulation that "same was payable for the benefit of creditors."

From these the facts chiefly pertinent to appellant's first objection, we conclude that the contract is sufficiently definite, and that under the description "The Farmers Warehouse in New Bern, being the vendor's warehouse and plant, meaning thereby the actual warehouse and storehouse, necessary equipment, furniture, fixtures, platforms, sidings, tracks, etc., etc.," the property is sufficiently described and identified to constitute a binding agreement to sell and convey. *Blanton v. Boney,* 175 N. C., 211; *Broadhurst v. Mewborn,* 171 N. C., 400; *Boddie v. Bond,* 158 N. C., 204.

As applicable to the question presented, in *Blanton's case, supra,* it was held: "A devise in this case of 'forty acres of land to include the dwelling and the old field' is held sufficient description to identify the lands, but if otherwise, the plaintiffs would take an undivided interest as heirs at law of the deceased, as in case of intestacy."

In *Boddie v. Bond, supra:* "A devise to the wife of 'the house where we now live, with all the outhouses, embracing the peach and apple orchard,' etc., is a sufficiently definite description to pass title to the property and permit the reception of parol evidence to fit the description to the land intended by the devise."

True, the part of the description, "The warehouse situate in New Bern and generally known as Farmers Warehouse," appearing in Exhibit "A," is just below the signature of the parties, but it is evidently

intended as a part of the agreement, and our statute of frauds using the word "signed" and not "subscribed," the description is just as binding as if written in the body of the paper. 2d Page on Contracts (2 ed.), sec. 1177. And while the parties evidently contemplated that there should be an actual survey and plat made and the same should be annexed to the supplemental agreement which was never done, the description as stated is sufficiently complete without it, and no court would hesitate to have a survey made or direct that the line be run so as to include the "actual warehouse, sidings, tracks, and appurtenances as agreed upon." Under these the recognized principles applicable this objection must be overruled.

And in reference to appellant's second position as to encumbrances, while the existence of an encumbrance inherent in the property as an easement, substantially impairing its value, or a moneyed lien for a substantial sum, unknown at the time of the contract or indeterminate in amount has been held to interfere with the conveyance of a marketable title (particularly where there is an express covenant against encumbrances), a mortgage or deed of trust to secure a definite sum of money, which is known to exist at the time of the contract, is not regarded as such an encumbrance in the strict sense of the term, nor will its existence always justify an avoidance of the agreement on the part of the vendee. Thus, where it is made to appear before a court having jurisdiction of the question that the encumbrance complained of is less than the purchase price, or where, being a docketed judgment, the amount has been amply secured on appeal in the case, or where, being of small, proportional amount, full and adequate protection can be afforded, it is held that specific performance will be enforced, the decree making proper provision for the relief of the property. A position especially insistent where the vendee has gone into possession fully aware of the alleged encumbrance and has been exercising over the property full control as owner. *Guild v. R. R.,* 57 Kansas, 70; *Thompson v. Carpenter et al.,* 4 Pa. St., p. 132; *Louis Blank v. Sadler,* 153 N. Y., 551; 1st Warville on Vendors, pp. 325-329-330; 25 R. C. L., p. 227, sec. 78; Bispham's Equity (9 ed.), sec. 389.

And the case of *Sutton v. Davis,* 143 N. C., *supra,* is in affirmance of the same general principle.

From the statement and exhibits it appears that these encumbrances were fully known, were definite in amount, and the parties in their contract had made express stipulation concerning them; that mortgages and deeds of trust might remain on the property to a reasonable amount (agreed by the parties to be as much as fifty per cent of the determined value), and the maturity of the same be postponed till 1 December, 1923. That the purchase price agreed upon was within $783 of the

alleged encumbrance, and so far as appears, plaintiffs are solvent and fully able to protect the vendees in the title offered. That the holders of these liens had given assurance, and were at all times ready, willing, and able to so modify them as to enable vendors to comply with the contract, and the plaintiff's representatives were here in Raleigh to carry out and complete the transfer on the day of the fire, and were prevented from doing so because defendants had sent the plat and survey to their Richmond office; and further, these lienors have since given their written obligation fully carrying out their assurances. And that defendant, as purchaser, had been in possession and control of the property since 1 August, exercising over it all the rights of owner.

On these the facts chiefly pertinent and under the authorities cited and the principles they approve, we are of opinion that at the time of the fire defendants were in possession of the property having an enforceable contract of purchase against the vendor; that the encumbrances themselves were the subject of such contract, and on the facts presented could readily have been dealt with by court decree so as to constitute no valid interference with a marketable title, and the vendee therefore being regarded as owner, must bear the loss occasioned by the destruction of the buildings. And the ruling of his Honor that defendants be held to comply with their contract of purchase must be

Affirmed.