# Snawder et al. v. Curry.

March 7, 1944.

361

Richard Priest Dietzman for appellants.

T. A. Barker for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE FULTON—
Reversing.

This controversy arose out of an action filed by the Commonwealth and Jefferson County against E. A. Snawder, doing business as the Suburban Realty Company, to declare a tax sale invalid and sell the property for back taxes. The property is a lot on Chestnut Street in Louisville. It was conveyed to Snawder by appellant Hoefflin in 1931 and reconveyed by Snawder to Hoefflin in 1940, about four months after this action was filed.

Before the action was filed, Lawrence Grauman, County Attorney of Jefferson County, notified Snawder of his intention to file it. Hoefflin then consulted Grauman, notifying him he was interested in the property, and the filing of the action was postponed for some time while Hoefflin was endeavoring to pay the taxes. After the action was filed Hoefflin still negotiated with Grauman but judgment of sale was entered on May 1, 1941. Even after judgment was rendered Hoefflin still continued to consult Grauman in an effort to postpone

the sale to enable him to raise the money but the property was duly advertised and sold on June 30, 1941 for $4,500.

Snawder filed exceptions to the report of sale and on November 3, 1941 Hoefflin filed an intervening petition, setting up the ownership of the property by virtue of an unrecorded deed from Snawder and sought to set aside the sale because of gross inadequacy of price and because it was made without his knowledge and without opportunity on his part to protect his property although, as alleged, Grauman had agreed that in the event a sale was ordered he would be notified thereof.

After hearing evidence the chancellor permitted the intervening petition to be filed but then ordered it stricken, overruled the exceptions and confirmed the sale. This appeal follows.

The first question confronting us is as to the right of appellant Hoefflin to intervene in the action. It is contended by the appellee that he had no right to do so under Section 29 of the Civil Code of Practice. But, whether such right of intervention is conferred by Section 29 is immaterial since we are of the opinion that if it is not then the right existed by virtue of Section 22 of the Civil Code of Practice. Under that section the real owner of property involved in litigation is entitled to intervene. By the intervening petition, Hoefflin, the real owner of the property in controversy, merely substituted himself for Snawder, the original defendant in whose name title appeared of record.

Hoefflin testified that the property was purchased by him prior to 1931 and that since then he has been the real owner; that he conveyed it to Snawder, his nephew, for convenience, with the agreement on the latter's part to reconvey it to him; that the deed from Snawder to him was merely in furtherance of this agreement. He says the property cost him between $35,000 and $40,000 and that he never valued it at less than $25,000. A number of real estate agents introduced by the appellant estimated the value of the property at from $10,000 to $18,000. One real estate agent, testifying for the appellee, valued it at $7,625 and another at $7,530. It was appraised before sale at $6,075 and on the appraisement appears the notation that it was assessed at $17,860. From this evidence we think

it is reasonable to conclude that the value of the property is in the neighborhood of $9,000. Unquestionably the $4,500 it realized at the sale was a grossly inadequate price.

But it is well settled that mere inadequacy of price is not in itself ground for setting aside a judicial sale unless it is so great as to create a presumption of fraud or shock the conscience. However, as said in Morton v. Wade, 175 Ky. 564, 194 S. W. 802, 804, "when the inadequacy is accompanied by circumstances which would tend to cause the inadequacy, or where the inadequacy is attended by any apparent unfairness or impropriety or oppression on the part of those connected with the sale, the sale will be set aside, though such circumstances are slight, and, by themselves, do not furnish a sufficient reason for vacating the sale."

We are therefore confronted with the question whether the grossly inadequate price for which the property sold was accompanied by circumstances of the kind indicated, requiring the setting aside of the sale.

Hoefflin testified that he knew nothing about the sale and would have taken steps to protect his property had he known of it. From his testimony and that of Mr. Grauman, it is apparent that this is true and that the first intimation he received was when Grauman informed him that the sale had taken place that morning. This lack of knowledge, however, is not a circumstance sufficient in itself to justify setting aside the sale, since it is incumbent on the owner of property against whom a judgment of sale has been rendered to keep himself informed as to the date of sale.

The question is whether Hoefflin, as a result of the negotiations between him and Grauman, was reasonably led to believe he would be notified of the sale. If he was, then, clearly, he is entitled to have the sale set aside. While it is the policy of the law to uphold judicial sales, it is also the rule that a purchaser at such a sale acquires no right until the sale is confirmed and a purchaser at a sacrificial price has no equity requiring confirmation of a sale at which the owner was prevented from being present and protecting his property by circumstances reasonably calculated to prevent a prudent owner from being present. See Foor et al. v. Mechanics' Bank & Trust Co. et al., 144 Ky. 682, 139

S. W. 840, Ann. Cas. 1913A, 714, where a sale was set aside because the owner was prevented from being present by accident or surprise.

We think the evidence discloses that Hoefflin honestly and reasonably believed he was to receive notice of the sale. He testified positively that Grauman agreed to give him notice. Grauman neither admitted nor denied this but says he talked with Hoefflin both before and after the judgment was rendered. He says that Hoefflin expressed great surprise when notified in the afternoon after the sale that the property had been sold. Grauman's account of this conversation was

"Mr. Hoefflin expressed great surprise and said, 'Why, I didn't know the property was being sold;' and I told Mr. Hoefflin 'If I had known for one minute that you didn't know that that property was going to be sold, I would have certainly notified you that the sale was going to take place;' and Mr. Hoefflin said something to me about, he said, 'You were to send me a salebill—send me a notice when the property was up for sale.' I said, 'Mr. Hoefflin, if you expected to hear from me I am certainly sorry.'"

While we are inclined to doubt that Grauman made an express agreement to notify Hoefflin, we are inclined to the belief that Hoefflin was reasonably led to believe that he would receive notice. We do not for a moment believe that Mr. Grauman intentionally misled Hoefflin or that his conduct is open to reproach—his integrity is so well known and unquestioned as to repel any such inference—but our consideration of the evidence as a whole convinces us that Hoefflin not unreasonably was under the impression that notice would be given him. This was such a circumstance, coupled with the gross inadequacy of the sale price, as to warrant the chancellor in refusing to confirm the sale, and this, we think, he should have done.

During the course of the evidence it was revealed that in the year 1939 Hoefflin furnished an affidavit to the National Bank of Kentucky as to property owned by him, for the purpose of effecting a settlement of indebtedness to the bank, in which he did not include the property in controversy. Considerable stress is laid on this by the appellee and it seems to have influenced the chancellor materially. But the evidence leaves no doubt

that Hoefflin was the real owner and, while he may wrongfully have concealed his ownership of the property from the bank, such dealing between him and the bank in nowise affected the appellee or Hoefflin's rights in regard to the sale.

It was contended that Hoefflin showed no right to intervene because in the deed from Snawder to him the grantee was designated as "M. A. Hoefflin, trustee." From this, it is argued that Hoefflin, individually, had no standing in court and no right to assert. We consider this as having little, if any, legal significance. From the face of the deed Hoefflin may have been trustee for himself, since no cestui que trust was named. No question of his individual ownership was raised by the appellee, either by pleading or by evidence, and it is undisputed that Hoefflin, individually, was the real owner of the property.

The judgment is reversed, with directions to enter a judgment in conformity with this opinion.